## THE FEDERAL NO. I.

### SMITH et al. v. PREMIUM COAL CO.
No. 15586.

District Court, E. D. New York.
June 22, 1939.

Mahar & Mason, of New York City (William J. Mahar and Edward L. P. O'Connor, both of New York City, of counsel), for libelants.

Thomas A. McDonald, of New York City, for respondent.

BYERS, District Judge.

In this cause libelants seek to recover for damages said to have been sustained by their deck scow "Federal No. 1" while under charter to the Premium Coal Company, in that the latter "negligently and carelessly" unloaded the said scow and during the course of the said unloading caused the said clam shell bucket to forcibly strike against the deck and beams of the said deck scow "Federal No. 1", on or about November 17, 1938.

The issue tendered is clear, and the question for decision is whether the libelants have sustained their burden of proof.

It is found as follows:

1. The said scow is the property of the libelants and was chartered to respondent on October 7, 1938, for service in carrying coal on deck, at a monthly charter hire, until April 1, 1939.

2. The charter contained the following: "Your company is not to be held responsible for any damage to the boat except such as is caused at your yard or yards, by your own equipment. * * *"

3. Conditioning of the scow was going forward on the date of the charter, and that was completed on October 28, 1938, on which date she took a deck load of coal at Edgewater and was brought over to the respondent's yard in Brooklyn.

4. She continued in such service until some time during the month of December, 1938, when she was taken off charter for repairs, at the instance of libelants.

5. The average deck load of coal carried was not less than 500 tons and, at the end of each trip, the coal was removed from the scow at the respondent's yards by the operation of a so-called clam digger bucket, alongside of which the scow was placed for discharge.

6. The scow was built in 1901, her dimensions being 118 feet by 36 feet, with 10 foot 6 inch sides.

7. This scow was formerly the property of the DeMars Barge Corporation, with which the witness Theodore E. DeMars was connected, and it was owned by that company from the Spring of 1929 until 1936, during which time she was laid up for about five years at the Edgewater Dry Dock.

8. The scow was surveyed on December 24, 1938, by Mr. DeMars, at which time he found that seven deck beams, i. e., the beams supporting the deck planks, were broken, and generally they were located on the starboard side, aft of amidships.

9. The broken deck beams were not in consecutive order. The three foremost were in one group; the fourth was separated from the first three, by one sound beam; the fifth was separated from the fourth, by two sound beams; and the sixth and seventh were separated from the fifth, by one sound beam. There were also broken-down deck planks in the forward area of the damage where the three deck beams were found broken.

10. As to each of the broken deck beams, the upper half thereof was badly deteriorated, the beams themselves being 6 by 12 inches at their greatest thickness, and the ends tapering to a depth of 9 or 10 inches.

11. The impaired condition of the upper portions of the deck beams referred to in the last finding was responsible for the sagging of the deck planks resting upon the said beams.

12. The evidence of the libelants fails to establish by any fair preponderance that the conditions referred to were brought about by the striking of the coal bucket upon the coal, or upon the deck of the scow.

The foregoing findings require the dismissal of the libel.

In connection therewith, it may be said that, while it is probable that a steel bucket weighing one ton, which is operated on a fall of 30 to 35 feet as was that of the respondent, cannot be manipulated with the delicacy or finesse of less sturdy instrumentalities, the libelants knew what would be expected of their scow when they chartered it to the respondent company. They must be held to have calculated upon the ability of the scow to withstand the ordinary wear and tear of such a service as was contracted for, and the evidence fails to disclose any indication that on the 17th day of November, 1938, for instance, or on any other date, the bucket was allowed to strike the deck in its descending movement, for no gouges in the deck were found; nor has it been shown that the lowering of the bucket, to enable it to be opened and to pick up coal lying on the deck, was so conducted as to subject the scow to more than the expectable incidents of such an operation.

The cargoes were all of anthracite coal, and the testimony is that the bucket was lowered with sufficient care to avoid unnecessary breaking of the coal.

For the libelants, nothing was shown to the effect that the deck beams in question were inspected or found to be sound at the time when the charter was entered into. While it may be true that this vessel had carried a 700 ton cargo of pig copper just prior to its employment in the respondent's affairs, it does not follow that the conditions revealed at the survey were anything but the result of the failure of inadequate cross beams to maintain a deck load of from 500 to 700 tons dead weight, without damage to the beams or the deck planks laid upon them.

Of course there was some impact when the bucket struck the coal, and that presumably was conducted from the deck to the supporting beams and, since they were in the condition found by the witness De Mars and also described by the witness Cruickshank, called for the libelants, as "slight decay on the surface of those timbers; they were darkened up", it is concluded that this particular damage was not the result of negligent operation by the respondent of its equipment, and, as stated, the libel must be dismissed for failure of proof.

Settle decree.